Dear Senator Tarver:
You requested our legal opinion on the applicability of La. Const. Art. III, § 4, to someone attempting to qualify as a candidate for election to the state Senate. In your request, you broke this general query down into particular matters which we will attempt to address herein.
La. Const. Art. III, § 4, includes and sets forth the eligibility requirements for a candidate for the legislature as follows:
 "§ 4. Qualifications; Residence and Domicile Requirements, Term; Vacancies
 "Section 4. (A) Age; Residence; Domicile. An elector who at the time of qualification as a candidate has attained the age of eighteen years, resided in the state for the preceding two years, and been actually domiciled for the preceding year in the legislative district from which he seeks election is eligible for membership in the legislature.
 "(B) Domicile; Special Provisions. However, at the next regular election for members of the legislature following legislative reapportionment, an elector may qualify as a candidate from any district created in whole or in part from a district existing prior to reapportionment if he was domiciled in that prior district for at least one year immediately preceding his qualification and was a resident of the state for the two years preceding his qualification. The seat of any member who changes his domicile from the district he represents or, if elected after reapportionment, whose domicile is not within the district he represents at the time he is sworn into office, shall be vacated thereby, any declaration of retention of domicile to the contrary notwithstanding.
 "(C) Term. A member of the legislature shall be elected for a four-year term.
 "(D) Vacancy. A vacancy in the legislature shall be filled for the remainder of the term only by election by the electors of the respective district as provided by law."
R.S. 18:451 provides:
"§ 451. Qualifications of candidates
 "A person who meets the qualifications for the office he seeks may become a candidate and be voted on in a primary or general election if he qualifies as a candidate in the election. Except as otherwise provided by law, a candidate shall possess the qualifications for the office he seeks at the time he qualifies for that office. No person, whether or not currently registered as a voter with the registrar of voters, shall become a candidate if he is under an order of imprisonment for conviction of a felony."
R.S. 18:461 et seq. (comprising Subpart B, "Qualifying for Primary Election," of Part IV, "Candidates," of Chapter 5, "Primary and General Elections," of Title 18, "Louisiana Election Code," of the Louisiana Revised Statutes) provide for the manner and procedure of qualifying as a candidate in a primary election. A person qualifies as a candidate by timely filing with the proper official a notice of his candidacy together with either a nominating petition or the qualifying (and any additionally imposed) fees. R.S. 18:461(A).
The proper official with whom a candidate for a legislative seat (including, therefore, a Senate seat) must qualify is the clerk of court for the parish in which the candidate is registered to vote. R.S. 18:252(2) and 462(B).
R.S. 18:491 et seq. (comprising Subpart D, "Objections to Candidacy," of this same Part, Chapter, and Title) provide the procedures for objecting to the qualifications of a candidate for election and answer many of your specific questions.
A registered voter qualified to vote in an election to fill a particular office may bring a legal action in court to object to the candidacy of a person who qualified as a candidate in a primary election for that same office. R.S. 18:491. One of the grounds on which such objection to the candidacy may be brought is that the candidate does not meet the qualifications for the office he seeks in the primary election. R.S. 18:492(3). Accordingly, if a person qualifies for election to a state Senate seat, any registered voter qualified to vote in the election to fill that seat may object to the lack of qualifications of the person who qualified for election thereto; such registered voter does so by filing a legal action in court.
Such a legal action must be commenced in a court of competent jurisdiction within seven (7) days after the close of qualifications for candidates in a primary election. Thereafter, no action will be allowed objecting to the candidacy based on the grounds for objections contained in R.S. 18:492 [including the grounds contained in R.S. 18:492(3) that the candidate does not meet the qualifications for the office he seeks]. R.S. 18:493.
It is not appropriate for such objection to candidacy to be raised with the clerk of court (the official with whom legislative candidates qualify) for the purpose of preventing a potential candidate from ever filing any qualifying documents. We reaffirm our previous Opinion Number 87-531 (copy enclosed) to the effect that qualifying officials may not refuse to qualify an individual who offers himself as a candidate for office even though the official has reason to believe that the person is not qualified for that office. The statutory duties of the clerk of court as a qualifying official in this regard are mandatory and ministerial; the statutes give him no discretion to judge the qualifications of a potential candidate. Rather, the procedures contained in R.S. 18:491 et seq. concerning objections to candidacy are expressly available for testing a candidate's qualifications for office.
Finally, similar questions as yours regarding La. Const. Art.III, § 4's residency and domiciliary requirements and the nature and sufficiency of evidence pertaining thereto have created a body of jurisprudential and persuasive authority.
Recent jurisprudential authority dealing with state Senate qualifications includes Broussard v. Romero, 607 So.2d 979
(La.App. 3rd Cir. 1992), wherein the state Third Circuit Court of Appeal explained:
 "In . . . Messer v. London, 438 So.2d 546 (La. 1983), the Louisiana Supreme Court set forth the applicable law as follows:
"`LAW
 "`Article 3, Section 4, Louisiana Constitution of 1974, requires that a candidate for the legislature must have been `actually domiciled for the preceding year' in the district from which he or she seeks election. LSA-R.S. 33:1225 provides that police jurors shall possess the same qualifications as members of the House of Representatives.
 "`The general definition of domicile is contained in LSA-C.C. art. 38:
 `The domicile of each citizen is in the parish wherein he has his principal establishment.
 `The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected.'
"`LSA-C.C. art. 41 deals with change of domicile:
 `A change of domicile from one parish to another is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there.'
 "`LSA-C.C. arts. 42 and 43 govern `proof of intent' to change domicile and state:
 Article 42: `This intention is proved by an express declaration of it before the recorders of the parishes, from which and to which he shall intend to remove.
 `This declaration is made in writing, is signed by the party making it, and registered by the recorder.'
 Article 43: `In case this declaration is not made, the proof of this intention shall depend upon circumstances.'
* * * * * *
 "`Residence and domicile are not synonymous terms. A person can have several residences but only one domicile. Taylor v. State Farm Mutual Auto. Ins. Co., 248 La. 246, 178 So.2d 238 (1965). Domicile is a person's principal domestic establishment, as contrasted to a business establishment. A man and wife are presumed to have the same domicile. Robinson v. Standard Oil Company of Louisiana, 194 La. 904, 195 So. 351 (1940).
 "`A change in domicile occurs when there is a change in actual residence accompanied by an intention to make a new principal establishment or home. Succession of Rhea, 227 La. 214, 78 So.2d 838 (1955). There is a presumption against change of domicile. In Re Adoption of Rials, 220 La. 484, 56 So.2d 844 (1952).
 "`The phrase `actually domiciled' in the Constitution of 1974 requires that one holding legislative office have a real rather than fictitious domicile in the area represented. However, the question of `intention', the crux of the preceding codal articles, remains viable. See 5 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 328.
 "`When a person holds public office, the law presumes that his domicile continues in the place where he exercises his public functions. Oakey v. Eastin, 4 La. 69 (1832). Any doubt should be resolved in favor of allowing a candidate to run for public office. Slocum v. DeWitt, 374 So.2d 755 (La.App. 3 Cir. 1979). The burden of proof is on the party contesting candidacy.'"
Broussard v. Romero, 607 So.2d at 980-981 (footnote number omitted).
Persuasive authority includes our previous Opinion Number 82-628 (copy enclosed), which is in accord with the jurisprudence and in which we explained:
 "Article III, Section 4 of the Louisiana Constitution provides an answer, in part, to the third question. The requirements of that constitutional provision are that the person must have resided in the state for the preceding two years, and shall have actually been domiciled for the preceding year in the legislative district in which he seeks election. The traditional cases defining `residence' merely point out that a residence is a place of abode which consists of a dwelling or structure which is habitable as an individual's home. A person may have many residences, and at a minimum, a residence must consist of a place with facilities for sleeping, bathing, cooking meals, storing clothes, etc. On the other hand, a domicile is, under law, the person's principal place of residence, and although a person may have many residences, he may only have one principal place of residence, or one domicile.
 "In answer to your fourth question, the decision in the case of Slocum v. DeWitt, App. 1979, 374 So.2d 755, reflects that where the evidence that a candidate for the House of Representatives had spent the greater portion of his non-working time at his residence, that such established that the candidate was actually domiciled at that particular residence which was in the district. Furthermore, in a suit objecting to the candidacy on the ground that the person is not actually domiciled in the legislative district, the doubt will be resolved in favor of the candidate, permitting him to run for public office, and the plaintiff has a difficult burden of proof. The Slocum case further stands that a candidate can establish a domicile for political purposes."
La. Const. Art. III, § 4, seeks to prevent absentee representation but should not be read hypertechnically, especially where there is real residency in the district and the objection to candidacy concerns merely the determination of domicile between two or more residences. As illustrated by theBroussard case, the many factual variations in which an objection to candidacy may arise on the grounds that a candidate lacks the residency or domiciliary qualifications for the office he seeks often make ultimate resolution of such an issue a purely factual one — that is, one that is within the evidence-evaluating discretion of the trial judge, whose decision in any individual case will be affirmed on appeal unless shown to be "manifestly erroneous," Broussard v. Romero, 607 So.2d at 981. Moreover, the nature of the legal concepts applicable to these factual variations often limits the dispositive question to being only "a factual inquiry to determine what was [the candidate's] intent,"id. Since the burden of proof in such a legal proceeding is not on the candidate to establish his qualifications but rather on the person objecting to the candidacy to establish the candidate's lack of qualifications (with any doubt being resolved in favor of allowing the candidate to run for public office), carrying the burden necessary to disqualify a candidate on these grounds can be very difficult, indeed.
We trust that this opinion has sufficiently answered your request and the particular questions that you posited therein. Nevertheless, if you still need any further legal advice on this or any other matter pertaining to your public duties, please do not hesitate to call upon us. With warmest regards, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 By: ______________________ THOMAS S. HALLIGAN Assistant Attorney General